# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

SALLY KOWALEWSKI, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

GLOBAL CREDIT & COLLECTION CORPORATION,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 18-cv-44

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Sally Kowalewski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Global Credit & Collection Corporation ("GCC") is a foreign business corporation with its principal offices located at 5440 North Cumberland, Suite 300, Chicago, Illinois 60656.

6.      GCC does substantial business in Wisconsin and has a registered agent for the purposes of service of process located at C T Corporation System, 301 South Bedford Street Suite 1, Madison, Wisconsin 53703.

7.      GCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      GCC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.      GCC is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

10.      On or about January 13, 2017, Northland Group, Inc. ("Northland") mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "CITIBANK, N.A." ("Citibank") and regarding an alleged "CITI MASTERCARD" account.  A copy of this letter is attached to this complaint as Exhibit A.

11.      Exhibit A represents the "Account Balance" to be $1,909.89.

12.      Exhibit A contains the following:

**Option I:** CITIBANK, N.A. will allow you to settle your account for $477.48 in 3 payments starting on 02/03/17. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Upon receipt and clearance of all three payments of $159.16, a letter will be sent confirming the above referenced account has been resolved.

Exhibit A.

13.      Upon information and belief, the alleged debt that GCC was attempting to collect was a credit card account, used only for personal, family or household purposes.

14.      Exhibit A states that Citibank will allow Plaintiff to settle her account with Citibank for $477.48.

2

15. On or about October 11, 2017, GCC mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to Citibank. A copy of this letter is attached to this complaint as Exhibit B.

16. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

18. Exhibit B purports to offer "options to help you resolve" the Citibank debt.

19. Option (1) in Exhibit B states:

OPTION 1
We are willing to accept $477.47 in twelve equal installments. That means that 12 equal payments of $39.79 will satisfy your account as a settlement, saving you a total of $1432.42 on this account. (75% off your current balance!)

Exhibit B.

20. On or about November 6, 2017, GCC mailed another debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to Citibank. A copy of this letter is attached to this complaint as Exhibit C.

21. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit C is a form debt collection letter used by Defendant to attempt to collect alleged debts.

23. Exhibit C purports to offer "options to help you resolve" the Citibank debt.

24. Option (1) in Exhibit C states:

OPTION 1
We are willing to accept $477.47 in twelve equal installments. That means that 12 equal payments of $39.79 will satisfy your account as a settlement, saving you a total of $1432.42 on this account. (75% off your current balance!)

Exhibit C.

3

25. On its face, Exhibit C is false, deceptive, misleading, and confusing as to the amount necessary to settle the account.

26. Exhibit C can fairly be read to identify two different amounts necessary to consummate the settlement.

27. A consumer making 12 payments of $39.79 would have paid a total of $477.48, not $477.47.

28. The unsophisticated consumer could attempt to make a lump sum payment of $477.47 and would not know whether she had sent enough money to actually settle the account, due to the possibility that GCC, or Citibank, actually required the consumer pay a total of $477.48 to settle the account.

29. The confusion as to the amount necessary to effectuate settlement is compounded by the offer Northland made in Exhibit A, which would settle the account for $477.48, the total amount of the payments according to the payment plan in Option (1) in Exhibits B and C.

30. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

31. Because the offer contains a false and confusing payment schedule, the amount specified in Option (1) in Exhibits B and C may be insufficient to settle the whole debt. Due to the terms of Option (1), it is possible that GCC, or Citibank, could continue to collect the entire remaining balance of the alleged debt – over $1,400 – plus additional interest, as a settlement has not actually been consummated.

4

32. Moreover, Option (1) is false, deceptive, and misleading in that it informs the unsophisticated consumer that she will pay a total of $477.47 but attempts to induce her into a payment plan whereby she will actually pay $477.48.

33. Plaintiff was misled, deceived, and confused by Exhibits B and C.

34. The unsophisticated consumer would be misled, deceived, and confused by Exhibits B and C.

### The FDCPA

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge

5

to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e).  Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices.  *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37.     15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38.     15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

6

39. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

40. 15 U.S.C. § 1692f generally prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

41. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## COUNT I – FDCPA

42. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

43. The Option (1) settlement offers in Exhibits B and C are false, deceptive, misleading, and confusing to the unsophisticated consumer. Option (1) states that the consumer may resolve the debt for $477.47 but provides an installment payment schedule that adds up to payments of $477.48.

44. The Option (1) settlement offer in Exhibits B and C is an unconscionable means of collecting the alleged debt because it misleads the consumer as to the amount she will pay if she pays the debt according to the payment plan.

45. The Option (1) settlement offer in Exhibits B and C attempts to induce the consumer into tendering a lump sum payment that may not actually settle the consumer's account.

46. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1).

7

## CLASS ALLEGATIONS

47.     Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B and/or Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) where the total of payments under the offered payment plan does not equal the amount of the settlement offer, (e) and the letter was mailed between January 8, 2017 and January 8, 2018, inclusive, (f) and was not returned by the postal service.

48.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

49.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

50.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

51.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

52.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

53.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  January 8, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

9